# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KATHLEEN A. BRANDNER, individually, and on behalf of her minor child M.B., individually and on behalf of all others similarly situated** | ) **CLASS ACTION COMPLAINT**<br>)<br>) **CIVIL ACTION NO.:**<br>)<br>**Plaintiffs**    ) **SECTION:**<br>)<br>) **MAGISTRATE:**<br>**Versus**    )<br>)<br>**ABBOTT LABORATORIES, INC., AND SAM'S** )<br>**EAST, INC.**    )<br>)<br>**Defendants**    ) |

## CLASS ACTION COMPLAINT

The petition of **Kathleen A. Brandner, individually and on behalf of her minor son, M.B., individually and on behalf of all others similarly situated**," (hereinafter refer to as Plaintiffs, Plaintiff, Ms. Brandner, and/or M.B.), by her attorneys, brings this action on her own behalf and on behalf of the class (the "Class") comprised of herself and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P."), against Abbot Laboratories, Inc. (hereinafter "Product Defendant"), and Sam's East, Inc. (hereinafter "Retail Defendant"), alleges the following upon information and belief, except as to paragraphs pertaining to Plaintiff's own actions, which are alleged upon personal knowledge:

## INTRODUCTION

### 1.

Plaintiff brings this action both on her own behalf and on behalf of a Class compromised of all others similarly situated to redress Defendant's numerous unfair and deceptive acts and practices designed to mislead the public in connection with their promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac Infant Formula (hereinafter "Similac"), which Defendants unfairly and deceptively promoted during the relevant time period a containing ingredients safe for infant consumption and being safe for use when, in fact, they may cause diarrhea, gastrointestinal discomfort, and other serious health problems.

## PARTIES

### 2.

Plaintiff Kathleen A. Brandner is an individual consumer who, at all times material hereto, was and is a resident of Jefferson Parish and a "Citizen" of Louisiana. Plaintiff M.B., is Mrs. Brandner's infant child who also resides in Jefferson Parish, Louisiana.

### 3.

Product Defendant Abbott Laboratories, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business located in North Chicago, Illinois (hereinafter "Abbott"). For the purposes of diversity jurisdiction, Abbott may be considered a "citizen" of Illinois and/or Delaware. At all times relevant hereto, Abbott was and is doing business within this judicial district.

### 4.

Retail Defendant Sam's East, Inc. d/b/a "Sam's Club" is a corporation organized and existing under the laws of Arkansas with its principal place of business located in Bentonville,

Arkansas (hereinafter "Sam's Club"). For the purposes of diversity jurisdiction, Sam's Club may be considered a "citizen" of Arkansas. At all times relevant hereto, Sam's Club was and is doing business within this judicial district.

**5.**

Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that the employees of Defendants, their subsidiaries, affiliates and other related entities, were the agents, servants and employees of Defendants, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of any Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of said Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of said Defendant while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

**6.**

This Court has original jurisdiction over this class action pursuant to 18 U.S.C. § 1332(d), which under the provisions of the Class Action Fairness Act ("CAFA") explicitly provides for the original jurisdiction of the Federal Courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interests and costs. Plaintiff alleges that the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interests and costs, as required by 28 U.S.C. §§ 1332(d)(2), (5). As set forth above, Plaintiffs are Citizens of Louisiana, whereas Abbott is a Citizen of Illinois and/or Delaware, and Sam's Club is a Citizen of Arkansas. Furthermore,

Plaintiff alleges that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than Louisiana, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to by 28 U.S.C. §§ 1332(d)(5)(B). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. §§ 1332(d)(5)(B).

**7.**

Venue is proper in the Eastern District of Louisiana under 28 U.S.C. §§ 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

**8.**

Abbott is in the business of formulating, designing, manufacturing, marketing, advertising, distributing and selling various infant powder formulas including those contained in rectangular plastic tubs. Abbott formulates, designs, manufactures, markets, advertises, distributes and sells Similac products which it promotes on its packaging as being safe for infants. Similac products are sold in grocery stores and pharmacies throughout the United States, including Sam's Club. In 2010, Abbott has sold millions of its Similac products in the United States.

**9.**

Sam's Club operates retail chains that are engaged in the retail sale of non-prescription drugs, and general merchandise. Sam's Club markets, advertises and sells Similac products in its stores.

**10.**

The packaging of the Similac product promotes their use to build "immune support," "strong bones" and "brain and eye".  In addition, Abbotts' marketing claims that:

> Each of the formulas in our line provides the balance of protein, minerals, and other nutrients that helps give babies a strong start in life. A baby's first year is so important, so count on Similac for nutrition you can trust.

**11.**

The Similac product packaging makes much of Similac being a formula approved and used most by hospitals.  In this regard, Similac's packaging boasts that it is safe for the consumption by infants.

## Abbott's Recall of the Similac Products

**12.**

Recently, on September 22, 2010, Abbott announced that consumers should immediately stop using Similac powder products because they were believed to contain pieces of beetles or beetle larvae.

**13.**

According to Abbott's announcement:

> Abbott is recalling these products following an internal quality review, which detected the remote possibility of the presence of a small common beetle in the product produced in one production area in a single manufacturing facility. The United States Food and Drug administration (FDA) has determined that while the formula containing these beetles poses no immediate health risk, there is a possibility that infants who consume formula containing the beetles or their larvae, could experience symptoms of gastrointestinal discomfort and refusal to eat as a result of small insect parts irritating the GI tract. If these symptoms persist for more than a few days, a physician should be consulted.

**14.**

Abbott recalled the following Similac products:

Certain Similac powder product lines offered in plastic containers.
Certain Similac powder product lines offered in sizes such as 8-ounce, 12.4-ounce and 12.9-ounce cans.

**Defendant's Actionable Conduct**

**15.**

Defendants negligently formulated, designed, manufactured, marketed, advertised, promoted, distributed and/or sold Similac products that can potentially cause serious health problems including, but not limited to, diarrhea and gastrointestinal discomfort.

**16.**

Defendants failed to properly exert quality control measures to ensure that the infant formulas were safe for consumption and did not cause adverse health effects and contain beetle particles and larvae.

**17.**

As a result of the acts and practices detailed herein and Plaintiffs' and Class members' reasonable belief in the quality and safety of Similac products, and the consequent reasonable belief that Similac products would not have adverse health effects, Plaintiffs and members of the Class were misled into purchasing the unsafe Similac products. Similac products did not provide the attributes and benefits Plaintiffs and other members of the Class reasonably expected to receive, sought and thought they were receiving. As a result, Plaintiffs and other members of the Class bought Similac products, which were not safe for consumption, that they were in their exclusive possession and that they were obligated to disclose or should reasonably have disclosed.

**18.**

Defendants failed to warn purchasers of the unreasonably dangerous characteristics associated with Similac products, including the fact that it may cause serious gastrointestinal discomfort problems, diarrhea, and other health problems.

**19.**

Based on the above material facts and statements, Defendants owed a legal duty to Plaintiffs and the Class to formulate, design, manufacture, market, advertise, distribute and sell Similac products that were safe for human consumption or not sell such products.

**20.**

Defendants breached this duty, which directly and proximately caused or resulted to Plaintiffs and other members of the Class suffering injury in fact, a loss of money or property, the personal expenditure of time and resources and/or other forms of injury and/or damage and/or mental anguish and/or physical pain and suffering.

**21.**

In addition, based on the duties owed to Plaintiffs and other Members of the Class to Defendants not to expose consumers to potentially harmful products, Plaintiffs and other members of the Class are also entitled to the reasonable value of the cost of medically monitoring their condition, as the need for medical monitoring is a reasonable consequence of suffering gastrointestinal related problems due to the consumption of Similac products and is thus necessitated as a direct result of use, and is reasonable considering: (1) the significance and extent of the consumption of Similac products; (2) the age of its consumers; (3) the seriousness of the conditions for which the members of the Class are at a risk; and (4) the clinical value of early detection.

**22.**

Defendants, in the exercise of reasonable care, should have known that the failure to exercise proper safety standards and equipment management would have led to insects infiltrating the Similac products creating unsafe formulas for infant children. Plaintiffs and members of the Class might have reasonably been expected by Defendants to purchase and ingest Similac products and be adversely affected by their defective condition.

**Plaintiffs Purchase of Similac Products**

**23.**

Prior to September 22, 2010, Plaintiffs purchased Similac at a Sam's Club located in Metairie, Louisiana. Plaintiffs did so because they had been exposed to the promotion, advertising and marketing of Similac products as set forth in detail herein. In trusting Defendants, they relied on the reputations of Defendants in purchasing Similac products, and were misled into thinking that Similac products were healthy and safe for use, which was false and misleading since the Similac contained insects pieces and larvae. As a result of Defendants' deceptive marketing scheme and her reliance on the purported trustworthiness and safety of Similac products, they were misled into purchasing and spending money on Similac products. In exchange for their money, Plaintiffs received something other than what was represented, a product they did not seek. As a result, they were injured.

**CLASS ALLEGATIONS**

**24.**

Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

**25.**

Pursuant to F.R.C.P. 23, Plaintiffs bring this action on behalf of themselves and a class (the "Class") comprised of all themselves and other consumers who purchased Similac during the relevant time period. Defendant's practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class. All putative Class members were and are similarly affected by having purchased Similac for its intended and foreseeable purpose as promoted, marketed, advertised, packaged, labeled, distributed and/or sold as set forth in detail above, and the relief sought herein is for the benefit of Plaintiffs and members of the putative Class. Plaintiffs allege that the plaintiff Class is so numerous that joinder of all members would be impractical.

**26.**

Based on the annual sales of Similac products and the popularity of Similac products, it is apparent that the number of consumers of Similac products is at least in the many thousands, thereby making joinder impossible.

**27.**

Questions of law and fact common to the Plaintiff Class exist and predominate over questions affecting only individual members, including, *inter alia*:

(a)     Whether Defendants negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac products;

(b)     Whether Defendants intentionally or negligently made misrepresentations in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac products;

(c)     Whether Defendants breached express warranties in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac products;

(d)     Whether Defendants breached implied warranties in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac products;

(e)     Whether Defendants' practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac products unjustly enriched Defendants at the expense of, and to the detriment of, Plaintiffs and other Class members;

(f)     Whether Defendants' conduct as set forth above injured consumers and if so, the extent of the injury.

**28.**

The claims asserted by Plaintiffs in this action are typical of the claims of other Class members as the claims arise from the same course of conduct by Defendants, and the relief sought is common.

**29.**

Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

**30.**

Certification of this class action is appropriate under F.R.C.P. 23(b) because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action remedy, it would be highly unlikely that the representative Plaintiffs or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery. Certification is also appropriate because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole. Further, given the large number of consumers of Similac products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**31.**

A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## FIRST CAUSE OF ACTION

### (Negligence)

**32.**

Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

**33.**

Defendants formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold Similac products to consumers.

**34.**

The use of Similac products containing insect and insect larvae causes serious gastrointestinal problems, diarrhea, and other health problems.

**35.**

Defendants have a duty to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Similac products, including a duty to ensure that Similac products are safe for use and a duty to warn that Similac products may cause gastrointestinal discomfort, diarrhea, and other health problems.

**36.**

As set forth in detail above, Defendants failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Similac products by failing to ensure that Similac products were safe for use.

**37.**

Specifically, Defendants were negligent in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and sale of Similac products in that they, among other things:

(a)    Failed to use reasonable care in formulating, designing and manufacturing Similac products so as to ensure that they were safe for use and did not cause adverse health effects including gastrointestinal problems, diarrhea, and other health problems;

(b)    Failed to conduct adequate safety testing of Similac products and the ingredients use to make Similac products; and

(c)    Failed to accompany Similac products with proper warnings regarding the possible adverse health effects associated with its use including, but not limited to, diarrhea and gastrointestinal discomfort.

**38.**

Despite the fact the Defendants knew or should have known that its Similac products could cause serious adverse health effects, it continued to market and sell them to consumers, including Plaintiffs and members of the Class, despite the reasonable possibility that Similac products caused gastrointestinal problems and other health problems including, but not limited to diarrhea.

**39.**

Defendants knew or should have known that Plaintiffs and members of the Class would foreseeable be put at risk of diarrhea, gastrointestinal problems and other health problems to

infant children as a result of Defendants' failure to give warning of the adverse health effects associated with use of Similac products.

**40.**

Defendants' negligence proximately caused Plaintiffs and the Class to be injured by potential gastrointestinal problems and other health problems, as well as the associated costs of diagnostic screening.

**41.**

Plaintiffs do not allege negligence based on an injury to Similac products themselves, Plaintiffs claims for negligence relate to injuries that they and every Class member sustained as a result of Similac products. Plaintiffs and other members of the Class have also suffered and will continue to suffer actual damages, including the potential costs of medical monitoring.

## SECOND CAUSE OF ACTION

### (Strict Liability)

**42.**

Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

**43.**

Defendants formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold Similac products to consumers.

**44.**

The Similac products that Defendants formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold were defective in their formulation, design and/or manufacturing. Further, the Similac products were defective when

they left control of Defendants such that: (1) the foreseeable risks of gastrointestinal problems and other health problems posed by Similac products exceeded the benefits associated with the formulation, design and manufacturing of Similac products, or (2) Similac products were unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other similar products.

**45.**

Defendants know or should have known that Similac products contained a non-obvious danger in their ingredients.

**46.**

Defendants knew that Plaintiffs and other members of the Class would use Similac products without expecting to be put at risk of possible gastrointestinal problems and other health problems to infant children. However, Defendants failed to inform Plaintiffs and other members of the Class as to the potential adverse health effects that using Similac products could have.

**47.**

Similac products were expected to and did reach Plaintiffs and other members of the Class without substantial change in condition.

**48.**

The Similac products Defendants formulated, designed, manufactured, promoted, marketed, advertised, packaged, labeled, distributed and/or sold were defective due to inadequate formulation, design, manufacture, safety testing and inadequate warning of the Similac products' true nature.

**49.**

Had Plaintiffs and members of the Class been warned about the possibility of gastrointestinal problems and other health problems to infant children, as well as insect contamination, as a result of the use of Similac products and/or the danger that they posed, they would not have purchased, acquired or used Similac products .

**50.**

As a direct and proximate result of the defective condition of the Similac products as formulated, designed, manufactured, distributed and/or sold by Defendants, Plaintiffs and other members of the Class have been injured by the possibility of serious gastrointestinal problems and other health problems and the associated costs of diagnostic screening.  Plaintiffs and other members of the Class have also suffered and will continue to suffer actual damages, including the potential costs of medical monitoring.

**51.**

As a direct and proximate result of the defective condition of the Similac products as formulated, designed, manufactured, distributed and/or sold by Defendants, Plaintiffs and other members of the Class have been injured by mental anguish associated by the consumption of Similac by infant children.  Plaintiffs and other members of the Class have also suffered and will continue to suffer actual damages, including the potential costs of medical monitoring.

**52.**

Plaintiffs do not allege negligence claims based on an injury to Defendants' Similac products themselves; Plaintiffs' negligence claims relate to injuries that they and Class members sustained as a result of the Similac products.

## THIRD CAUSE OF ACTION

### (Intentional Misrepresentation)

**53.**

Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

**54.**

Defendants have represented to the public, including Plaintiffs, by promotion, marketing, advertising, packaging, labeling and other means, that its Similac products had characteristics, ingredients, and qualities that they did not have, specifically, that they were safe for consumption by infants.

**55.**

Defendants' representations were untrue in that Similac products were not safe for use because of the possibility that they could cause gastrointestinal problems, diarrhea, and other health problems.

**56.**

At the time Defendants made the representations herein alleged, Defendants knew the representations were false.

**57.**

Defendants made the misrepresentations herein alleged with the intention of depriving Plaintiffs and Class members of property or otherwise causing injury.

**58.**

Plaintiffs and others believed and relied on Defendants' promotion, marketing, advertising, packaging and labeling of Similac products, and, in justifiable reliance thereon, purchased Similac products.

**59.**

As a proximate result of these acts, Plaintiffs and other consumers were induced to spend an amount to be determined at trial on Similac products manufactured, promoted, marketed, advertised, packaged, labeled, distributed and sold by Defendants, and thereby lost money by purchasing Similac products that were not what they were represented to be, which were worth less than they paid for them and which they would not have purchased but for the misrepresentations.

**60.**

As a proximate result of these acts, Plaintiffs and other consumers were induced to feed infant children insect contaminated Similac products manufactured, promoted, marketed, advertised, packaged, labeled, distributed and sold by Defendants, and thereby suffered extreme mental anguish and physical pain and suffering.

**61.**

Plaintiffs and other consumers, in purchasing and using Similac products as herein alleged, did rely on Defendants' above representations, all to their damage.

## FOURH CAUSE OF ACTION

### (Negligent Misrepresentation)

**62.**

Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

**63.**

Defendants represented to the public, including Plaintiffs, by promotion, marketing, advertising, packaging, labeling and other means, that Similac products had characteristics, ingredients, and qualities that they did not have, specifically, that they were safe for use by infant children.

**64.**

Defendants' representations were false in that Similac products were not safe for use, contained insects and insect larvae, and posed a risk of gastrointestinal problems and other health problems including, but not limited to diarrhea and gastrointestinal discomfort.

**65.**

Defendants made the false representations herein alleged with the intention of guiding the consuming public to purchase Similac products.

**66.**

Plaintiffs and others believed and relied on Defendants' promotion, marketing, advertising, packaging and labeling of Similac products, and in justifiable reliance thereon, purchased Similac products.

**67.**

At the time Defendants made the misrepresentations herein alleged, Defendants had no reasonable grounds for believing the representations to be true.

**68.**

As a proximate results of Defendants' negligent misrepresentations, Plaintiffs and other consumers were induced to spend an amount to be determined at trial on Similac products manufactured, distributed, and sold by Defendants, and thereby lost money by purchasing Similac products that were not what they were represented to be, which were worth less than they paid for them and which they would not have purchased but for the misrepresentations.

**69.**

As a proximate results of Defendants' negligent misrepresentations, Plaintiffs and other consumers were induced to spend an amount to be determined at trial on Similac products manufactured, distributed, and sold by Defendants, and thereby suffered mental anguish and physical pain and suffering resulting from feeding insect contaminated infant formulae to an infant child.

## FIFTH CAUSE OF ACTION

### (Breach of Express Warranty)

**70.**

Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

**71.**

Defendants provided Plaintiffs and other members of the class with written express warranties that by promotion that Similac products were safe for use and contained "clinically proven ingredients."

**72.**

Defendants breached these warranties in violations of applicable law, which resulted in damages to Plaintiffs and other members of the Class, who overpaid for Similac products.

**73.**

As a proximate result of this breach of warranty by Defendants, Plaintiffs and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged, labeled, distributed and sold by Defendants, were deprived of the benefit of their bargain and spent money on products that did not have any value, had less value than warranted or that they would not have purchased and used had they known the true facts about them.

**74.**

As a proximate result of this breach of warranty by Defendants, Plaintiffs and other consumers were induced to spend an amount to be determined at trial on Similac products manufactured, distributed, and sold by Defendants, and thereby suffered mental anguish and physical pain and suffering resulting from feeding insect contaminated infant formulae to an infant child.

**75.**

Plaintiffs further assert claims under all other applicable state laws governing express warranties.

**SIXTH CAUSE OF ACTION**

**(Breach of Implied Warranty of Merchantability)**

**76.**

Plaintiff repeat and reallege all preceding paragraphs, as if fully set forth herein.

**77.**

Plaintiffs and other Class members purchased Similac products, which were promoted, marketed, advertised, packaged, labeled, distributed and/or sold as safe to consume and contained ingredients safe for infant children. Pursuant to these sales, Defendants impliedly warranted that Similac products would be merchantable, fit for the ordinary purposes for which such goods are used and conform to the promises or affirmations of fact made in Similac promotions, marketing, advertising, packaging and labels. By their representations regarding the reputable nature of their companies and related entities, and by their promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac products, Defendants warranted that Similac products were safe to consume and contained ingredients safe for infant children. Plaintiff and other Class members relied on Defendants' representations that Similac products were safe to consume and contained ingredients safe for infant children, and at or about that time, Defendants sold Similac products to Plaintiffs and other Class members. However, Similac products were not safe to use because they contained insect and insect larvae that may cause gastrointestinal problems and other health problems, as set forth in detail above.

**78.**

Defendants breached the warranty implied at the time of sale in that Plaintiffs and other Class members did not receive products that were safe to use and thus the goods were not merchantable as fit for ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled, distributed and/or sold.

**79.**

As a proximate result of this breach of warranty by Defendants, Plaintiffs and other Class members have suffered damages in an amount to be determined at trial in that, among other

things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged, labeled, distributed, and/or sold by Defendants, were deprived of the benefit of their bargain and spent money on products that did not have any value, had less value than warranted or that they would not have purchased and used had they known the true facts about them.

**80.**

As a proximate result of this breach of warranty by Defendants, Plaintiffs and other consumers were induced to spend an amount to be determined at trial on Similac products manufactured, distributed, and sold by Defendants, and thereby suffered mental anguish and physical pain and suffering resulting from feeding insect contaminated infant formulae to an infant child.

**81.**

Plaintiffs further assert claims under all other applicable state laws governing implied warranties of merchantability.

**SEVENTH CAUSE OF ACTION**

**(For Breach of Implied Warranty of Fitness for Particular Purpose)**

**82.**

Plaintiffs repeat and reallege all promoted, marketed, advertised, packaged, labeled, distributed and sold by Defendants preceding paragraphs, as if fully set forth herein.

**83.**

Plaintiffs and other Class members purchased Similac products, which were promoted, marketed, advertised, packaged, labeled, distributed and/or sold as purportedly safe to consume

and contained ingredients safe for infant children. Pursuant to these sales, Defendants impliedly warranted that Similac products would be fit for the purpose of being safe to consume and contained ingredients safe for infant children. By their representations regarding the reputable nature of its company and related entities, and by their promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac products, Defendants warranted that Similac products were safe to consume and contained ingredients safe for infant children. Plaintiffs and Class members bought Similac products from Defendants, relying on Defendants' skill and judgment in furnishing suitable goods as well as Defendants' representations that Similac products were safe to consume and contained ingredients safe for infant children. However, Similac products were not safe to use because they contained insects and insect larvae that may cause gastrointestinal problems and other health problems, as set forth in detail above.

**84.**

Defendants breached the warranties implied at the time of sale in that Plaintiffs and other Class members did not receive Similac products that were safe to use because they contained insects and insect larvae and were not fit for the purpose of being safe for as promoted, marketed, advertised, packaged, labeled, distributed and sold by Defendants.

**85.**

As a proximate result of this breach of warranty by Defendants, Plaintiffs and other Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged, labeled, distributed and sold by Defendants, were deprived of the benefit of their bargain and spent money on products that did not have value, had

less value that warranted or that they would not have purchased and used had they known the true facts about them.

**86.**

Plaintiffs further assert claims under all other applicable state laws governing implied warranties of fitness for a particular purpose.

## EIGHTH CAUSE OF ACTION

### (Unjust Enrichment)

**87.**

Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

**88.**

Defendants have benefited from their unlawful acts by receiving excessive revenue derived from the sales of Similac products represented as being safe for use. Defendants appreciated and/or knew the benefit of the receipt of such excessive revenue. This excessive revenue has been received by Defendants at the expense of Plaintiffs and other members of the Class, under circumstances in which it would be inequitable for Defendants to be permitted to retain the benefit.

**89.**

Plaintiffs and other members of the Class are entitled to the establishment of a constructive trust consisting of the benefit conferred upon Defendants in the form of their excessive revenue derived from the sale of Similac products from which Plaintiffs and other Class members may make claims on a *pro rata* basis for restitution.

## NINTH CAUSE OF ACTION

### (For Injunctive and Declaratory Relief)

**90.**

Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

**91.**

As set forth above, through the improper practices described above, Defendants have misrepresented to Plaintiffs and other members of the Class that their Similac products were safe for use even though they contained insects and insect larvae and the use of the products may result in gastrointestinal problems and other health problems.

**92.**

Defendants' practices described herein are unlawful and against public policy and, therefore, Defendants should be prohibited and enjoined from engaging in these practices in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs and the Class pray that the Court enter judgment for them against Defendants against as follows:

a. Certifying the Class pursuant to F.R.C.P. 23, certifying Plaintiffs as the representatives of the Class, and designating Plaintiffs' counsel as counsel for the Class;

b. A declaration that Defendants have committed the violations alleged herein;

c. Awarding Plaintiffs and the Class permanent injunctive relief prohibiting, restraining and enjoining Defendants from engaging in the conduct complained of herein, including *inter alia*, promoting, marketing, advertising, distributing, and selling Similac products in the manner described herein;

d. Awarding Plaintiffs and the Class refunds, damages, general damages, punitive damages, consequential damages, other special damages, attorneys' fees and other reasonable costs;

e. For all statutory damages available under the claims asserted;

f. For payment of costs of suit herein incurred;

g. For both pre-judgment and post-judgment interest on any amounts awarded;

h. For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

i. For such other and further relief as the Court may deem proper.

Respectfully Submitted,

/s/*Michael S. Brandner, Jr.*_____
**MICHAEL S. BRANDNER, JR. (LSBA #27973)**
BRANDNER LAW FIRM, LLC
3324 N. Causeway Blvd.
Metairie, Louisiana 70002
Telephone:    (504) 552-5000
Facsimile:    (504) 888-5456
Email: Michael@BrandnerLawFirm.com

AND

**STEPHEN S. KRELLER (LSBA #28440)**
THE KRELLER LAW FIRM
4224 Canal Street
New Orleans, Louisiana 70119
Telephone: (504) 484-3488
Facsimile: (888) 294-6091
Email: ssk@krellerlaw.com

**SERVICE INSTRUCTIONS ON NEXT PAGE**

**PLEASE SERVE:**

**SAM'S EAST INC.**
Through its registered agent for service of process:
C T Corporation System
5615 Corporate Blvd., Suite 400B
Baton Rouge, La 70808

**ABBOTT LABORTORIES, INC.**
Via Long-Arm Statute
Through its registered agent for service of process:
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801