UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KATHLEEN A. BRANDNER | CIVIL ACTION |
| VERSUS | NO. 10-3242 |
| ABBOTT LABORATORIES, INC., ET AL. | SECTION "R" (3) |

ORDER

On June 8, 2011, defendants' Motion to Limit the Retention of Recalled Product [Doc. #63] came on for oral hearing before the undersigned. Present were Stephen Kreller, Michael Brandner, David Scalia and Douglas Plymale on behalf of plaintiff and John Winter and Don McKinney on behalf of defendants. After the oral hearing, the Court took the motion under advisement. Having reviewed the motion, the opposition, the case law and the parties' oral argument, the Court rules as follows.

I.      Background

This is a putative product-liability class action. Defendants formulate, design and market Similac products that it promotes as safe for children. On September 22, 2010, defendants recalled certain Similac-powder product lines offered in plastic containers and certain Similac-powder product lines offered in sizes such as 8-ounce, 12.4-ounce and 12.9-ounce cans. Defendants had discovered that such products were potentially contaminated with beetle parts and/or beetle larvae. Plaintiff had purchased and used such a Similac product before defendants recalled it. Plaintiff

alleges claims of negligence, strict liability, intentional misrepresentation, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, unjust enrichment and injunctive and declaratory relief.

## II.     The Parties' Contentions

### A.     Defendants' Motion to Limit the Retention of Recalled Product

Defendants seek a protective order to reduce the amount of recalled Similac formula that they currently store and maintain. Defendants assert that they maintain over four million units of Similac, which is unnecessarily expensive and burdensome. Defendants seek to destroy the majority of the product and retain only 100,000 units, a quantity that they allege is more than sufficient to perform "statistically[-]valid testing of [the] recalled product." Defendants seek to reduce the maintained product to (1) 50,000 unopened, uncompromised units that were recalled and (2) 50,000 units manufactured during the recall period at defendant's Sturgis, Michigan facility and never distributed to the public. Defendants note that they will choose the 100,000 samples with input from plaintiff to ensure the best representative example.

Defendants first argue that the protective order will eliminate concerns associated with storing large amounts of opened and unopened perishable product that raise potential issues of infestation and contamination. Defendants argue that the enormity of the locations at which the product is stored may lead to theft and the product's resurface on the market.

Defendants also argue that the protective order will prevent defendants from incurring the unnecessary burden of maintaining over four million units of recalled formula. The cost to store the recalled product is estimated at $3 million a year.

Citing case law, defendants contend that district courts have limited discovery to statistical samples when the burden of full production outweighs its potential benefits. To support its argument, defendants note that the Food & Drug Administration ("FDA") has urged defendants to destroy the recalled product. Such a determination is arguably within the agency's competence and administrative purpose.

Defendants contend that under Louisiana law, plaintiff must demonstrate that her particular unit of Similac contained any beetle by-product. Defendants thus contend that the stored formula has little evidentiary value. Using a mathematical formula, defendants contend that a mere 4,137 units is an ample representative quantity to test.

### B.     Plaintiff's Opposition

Plaintiff argues that defendants' motion seeks court-sanctioned destruction of evidence. Plaintiff notes that defendant filed their motion more than eight months after the recall, six months after the FDA notice and seven days after broaching the subject with plaintiff. Plaintiff contends that such a delay belies any sense of urgency now.

Plaintiff argues that under Louisiana law, there is an adverse inference when evidence is destroyed that the evidence is not favorable to the spoliator. Plaintiff notes that defendants offer no evidence to support their claim that the formula may be stolen or how much they spend to maintain it. Plaintiff also notes that defendants' statistical analyses are unqualified expert testimony that is not yet properly before the Court. Plaintiff contends that a retention of any recalled Similac that was returned unopened by individual customers is absent from defendants' proposed plan of retention. Plaintiff notes that there is no evidence of how many units were released in to commerce in Louisiana and would thus be within the jurisdiction of the Court.

Plaintiff also notes that there are at least four other putative class actions pending in other federal courts. Plaintiff argues that the destruction of any Similac product will be prejudicial to the plaintiffs in those other cases. Plaintiff contends that the destruction of any Similac product may be prejudicial to individual plaintiffs because there is no evidence before the Court of whether defendants maintain any of the specific products returned by individual plaintiffs.

**C.     Defendants' Reply**

Citing Federal Rule of Civil Procedure 26 and case law, defendants argue that district courts have routinely issued protective orders of the kind that defendants seek. Defendants note that their assertions are supported by uncontroverted evidence in the form of a sworn affidavit of their Director of Product Safety and Security, Randal P. McKay, who attests that defendants store over 4.1 million units of recalled Similac at a cost of $235,000.00 per month. (Ex. A, attached to Defs.' Mem. Supp. Mot.). Defendants also attached the letter from the FDA in which the agency urged defendants to "immediately begin plans to destroy the recovered and/or held products" to avoid "accidental misuse." (Ex. A-1, attached to Defs.' Mem. Supp. Mot.). Defendants contend that plaintiff has failed to rebut McKay's sworn statements. Defendants argue that the approaching summer weather raises the threat of spoliation and infestation and that this is why defendants now urge this motion. Defendants contend that the opened and compromised units have been exposed for eight months to spoilage and contamination and can not now shed light on plaintiff's claims.

Defendants maintain that the only units necessary to plaintiff to maintain her action are those that she purchased and that she retains to this day. Plaintiff's objection must thus be on behalf of the other putative class members. Defendants note that plaintiff finds herself in a quandary here because if common questions of law and fact exist to certify a class, there is no need to maintain

4

more than a representative sampling of the recalled product.

Defendants argue that plaintiff's objection that they do not plan to maintain units returned by individual customers is silly. Defendants assert that unopened product returned by end-consumers is the same as product returned by retailers because end-consumers purchase the product from retailers. Defendants contend that unopened product returned by retailers is preferable because such product is unopened and intact. Defendants contend that the destruction of the product will not prejudice plaintiff in determining the size of the putative class because defendants do not plan to destroy consumer-return data or the records of those consumers who participated in the recall.

Lastly, defendants note that they do not plan to destroy any recalled product until they have consulted the other courts and litigants involved in the other federal suits. Should this Court grant their motion, defendants plan to present the order to the other federal courts and ask them to defer to this Court's order as a matter of comity.

### III.    Law and Analysis

The Court finds initially that sampling is a permissible procedure in putative class actions. If sampling were universally prohibited, it could only be because a party had an absolute right to obtain discovery from each adverse party or to introduce evidence concerning each such party. Plaintiff has not identified any source for such a right. Federal Rule of Civil Procedure 26(c) provides district courts broad discretion to limit discovery when "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See Seattle Times v. Rhinehart*, 467 U.S. 20, 36 (1984).

Courts have not hesitated to issue protective orders such as the one that defendants seek here when the cost of maintaining a recalled product poses an undue burden. *See In re: Pet Food Prods.*

*Liab. Litig.*, 345 Fed App'x 857,859, 2009 WL 3022132, *1 (3d Cir. Sept. 23, 2009) (noting approval and affirming district court order that allowed defendant "to retain a statistically significant representative sampling of the organized inventory and to dispose of the remaining recalled pet food, the raw wheat gluten and the unorganized inventory."); *In re: Surgical Sutures Cases II*, No. JCCP004148, 2003 WL 21996891, *2 (Cal. Super. Ct. Mar. 7, 2003) (noting that the FDA expected and required defendant to destroy recalled product and finding that defendant did not spoliate evidence after destruction of all but a representative sample of product); *see also Benson v. St. Joseph Regional Health Ctr.*, Civ. A. No. H-04-04323, 2006 WL 1407744, **1-2 (S.D. Tex. May 17, 2006) (noting approval of discovery through representative samples of patient charts and peer review materials); *Long v. Trans World Airlines, Inc.*, 761 F. Supp. 1320, 1322-30 (N.D. Ill. 1991) (discussing and approving discovery through representative samples for damages in class-action lawsuit).

Here, plaintiffs have cited the Court to no authority that the retention of (1) 50,000 unopened, uncompromised units that were recalled and (2) 50,000 units manufactured during the recall period at defendant's Sturgis, Michigan facility and never distributed to the public is inadequate and prejudicial to their lawsuit. Given the undue burden of maintaining 4.1 million units of recalled Similac, the potential for accidental misuse and the FDA's recommendation that defendants destroy the recalled product, this Court finds that a protective order shall issue and defendant need maintain only (1) 50,000 unopened, uncompromised units that were recalled and (2) 50,000 units manufactured during the recall period at defendant's Sturgis, Michigan facility and never distributed to the public. Moreover, the Court finds that defendants' commitment that they will work together with counsel for plaintiff to retain the best representative sample adequately protects plaintiff's

6

interest here.

Before defendants destroy any such product, however, defendants shall file this Court's Order in all of the other federal courts in which a similar putative class-action lawsuit is pending. Defendants shall obtain the consent of this Court's sister courts to destroy any of the recalled product.

## IV.     Conclusion

For the foregoing reasons,

**IT IS ORDERED** that defendants' Motion to Limit the Retention of Recalled Product [Doc. #63] is GRANTED IN PART as outlined above.  Any dispute between counsel regarding the selection of the best representative sample shall be brought to the Court's attention, and the Court will hold a conference should circumstances so warrant.

New Orleans, Louisiana, this 16th day of June, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**