UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHLEEN A. BRANDNER                                CIVIL ACTION

VERSUS                                              NO. 10-3242

ABBOTT LABORATORIES, INC., ET AL.                   SECTION  "R" (3)

ORDER

On September 28, 2011, the New Jersey Plaintiffs' Motion for Reconsideration to Modify This Court's June 16, 2011 Order [Doc. #109] and the Motion for Reconsideration of This Court's June 16, 2011 Order [Doc. #110] came on for oral hearing before the undersigned. Present were Stephen Kreller and Douglas Plymale on behalf of all plaintiffs and Don McKinney on behalf of defendants. After the oral hearing, the Court took the motions under advisement and allowed the parties to file supplemental memoranda. Having reviewed the motions, the opposition, the case law and the parties' arguments, the Court rules as follows.

I.      **Background**

This is a putative product-liability class action. Defendants formulate, design and market Similac products that it promotes as safe for children. On September 22, 2010, defendants recalled certain Similac-powder product lines offered in plastic containers and certain Similac-powder product lines offered in sizes such as 8-ounce, 12.4-ounce and 12.9-ounce cans. Defendants had

discovered that such products were potentially contaminated with beetle parts and/or beetle larvae. Plaintiff had purchased and used such a Similar product before defendants recalled it. Plaintiff alleges claims of negligence, strict liability, intentional misrepresentation, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, unjust enrichment and injunctive and declaratory relief.

On May 24, 2011, defendants filed a Motion to Limit the Retention of Recalled Product [Doc. #63], a motion that, in essence, sought a protective order to reduce the amount of recalled product that defendant had to retain. On June 16, 2011, this Court granted in part defendant's motion for a protective order and allowed defendant to retain only (1) 50,000 unopened, uncompromised units that were recalled and (2) 50,000 units manufactured during the recall period at defendant's Sturgis, Michigan facility and never distributed to the public. [Doc. #76]. Because putative class actions are pending in other federal courts around the country, the Court's earlier order also required defendants to file this Court's order in all of the other courts and to obtain the sister courts' approval of the order. Plaintiffs now seek reconsideration of that order.

## II.     The Parties' Contentions

### A.     New Jersey Plaintiffs' Motion for Reconsideration to Modify This Court's June 16, 2011 Order

New Jersey Federal Magistrate Judge Tonianne J. Bongiovanni – in addressing a motion for a protective order similar to the earlier motion that this Court granted in part – ordered the New Jersey plaintiffs to appear specially in this Court to ask this Court to reconsider its earlier motion. In compliance with this Court's earlier order, defendants seek entry of this Court's protective order in the New Jersey federal court.

2

Plaintiffs argue that the Court's earlier order does not take into account issues of past spoliation. Plaintiffs contend that they have learned that defendants have not properly kept track of consumer-returned tainted products and have already commingled the retailer-returned product with the end-consumer-returned product. Defendants now allegedly admit that they can not trace consumer-returned units. Plaintiffs contend that the commingling and spoliation has serious implications given defendants' position that plaintiffs will be unable to prove that they individually received contaminated product. Plaintiffs assert that defendants dispute whether it is possible to identify which class members received tainted product and now defendants seek to destroy the only product and evidence of returned product that remains.

Plaintiffs ask the Court to order defendants to take further steps to identify and to preserve the following categories of product in a sufficient representative sampling:

1.      Similac product that was returned by consumers directly to defendants;

2.      Similac product that was returned by consumers to retailers;

3.      Similac product that was returned by retailers to defendants without first having been sold to consumers; and

4.      Similac product that was never distributed.

Plaintiffs agree that defendants should be able to reduce the amount of currently retained product in some fashion, but that any such destruction must proceed only after representatives of plaintiffs with pending cases have input (in a unified fashion) on the sampling protocol. Plaintiffs ask that any order that the Court enters clarify that any prior spoliation of evidence is not immunized because of any protective order issued by this or any other Court.

**B.      Motion for Reconsideration of This Court's June 16, 2011 Order**

Plaintiffs in this Court note that since winning the entry of this Court's Order, defendants allegedly now take the completely contradictory position that each putative class member will have to test their individual product in order to establish liability and damages. In their motion to deny class certification before the District Court, defendants now contend that plaintiffs can not prevail because each plaintiff must test their individual product. According to plaintiffs, that is now impossible because defendants have destroyed the products.

Plaintiffs also maintain that while defendants have provided additional details of a proposed sampling protocol to plaintiffs in other cases, they have not provided those details to plaintiffs here. Plaintiffs argue that because defendants have brandished this Court's earlier order to other courts around the country, and those courts are deferring to this Court to address the issue again, it is particularly important that defendants be required to meet and confer with all plaintiffs' counsel to come up with a statistically-valid sampling protocol. Plaintiffs contend that defendants must then accept such a sampling plan as legally sufficient and statistically valid. Finally, plaintiffs maintain that if destruction of any of the retained product is allowed, a neutral third-party should be retained to select the sample to prevent any potential sampling bias.

Lastly, plaintiffs ask the Court to verify that this Court's earlier order did not condone any prior spoliation on defendants' part. Plaintiffs contend that testing may now have become impossible because defendants can not identify which individual product a particular consumer returned. Accordingly, plaintiffs argue, defendant failed in their duty to preserve that evidence.

### C.    Defendants' Combined Opposition

Defendants first note that at least five sister courts have adopted this Court's order and attach all of the orders to their memorandum in opposition.

Citing the case law on motions to reconsider under Federal Rule of Civil Procedure 60(b), defendants contend that plaintiffs may only succeed here if they demonstrate manifest injustice. Defendants first argue that they have never adopted inconsistent positions and that in all pleadings filed in this Court they have argued that each plaintiff must prove that his or her particular unit of Similac was contaminated. Defendants note that they have asserted this argument since the lawsuit was before the Judicial Panel on Multidistrict Litigation. Defendants maintain that they have always asserted that (1) only a small portion of the recalled product contained any beetles; (2) as a result, the mere purchase of recalled product does not establish injury; and (3) the putative class is thus uncertifiable because its lacks commonality. Defendants steadfastly maintain that a sample of 100,000 products is far larger than necessary to determine the extent of the contamination.

Defendants also contend that if a class is not certified, the interests of other unknown Similac purchasers are not a part of the proceeding, and Brandner thus has no standing to protect them. In such an event, defendants argue that any inventory reduction is irrelevant. As the federal court in Illinois noted, it will be practically impossible to trace any particular can of recalled product to any particular consumer in any event. Defendants contend that plaintiffs raise no new issues, and a motion to reconsider is not a proper vehicle to re-litigate old issues that the Court resolved earlier to plaintiffs' dissatisfaction.

With regard to any allegation of earlier spoliation, defendants contend that they have never argued that they labeled each individual recalled product with the name of the consumer who returned it. Defendants contend that they were under no duty to do so, and plaintiffs have cited no law to support such a duty. Defendants note that this Court did not find this argument dispositive before, and a motion to reconsider is thus the improper vehicle to rehash the losing argument. Citing

5

case law, defendants maintain that spoliation can not occur when evidence is disposed of pursuant to a routine policy or even as the result of negligence. Plaintiffs must demonstrate both intentional conduct and bad faith, and, defendants argue, they have failed to do so here.

Pointing specifically to the arguments of the New Jersey plaintiffs, defendants contend that they fail to explain why (1) opened units of Similac – a perishable food product that has been sitting open for a year – have any evidentiary value; and (2) the path by which a consumer returned a recalled unit of Similac bears on that unit's evidentiary value.

Defendants note that they have proposed that the only reasonably efficient and sanitary way to select the 100,000 representative units is on a per-pallet basis – *i.e.*, by randomly selecting a pallet of several hundred units of Similac and then relocating that pallet to a preservation site. This is less burdensome, defendants contend, than opening each pallet's shrink-wrap, selecting individual product units and relocating them one at a time. Defendants maintain that no party has objected to this method.

In this Court's earlier order, it authorized defendants to retain only (1) 50,000 unopened, uncompromised units that were recalled and (2) 50,000 units manufactured during the recall period at defendant's Sturgis, Michigan facility and never distributed to the public. Now, and in response to the objections of the New Jersey plaintiffs as to the commingling of the product by defendants, defendants contend that they will preserve (1) 50,000 undistributed units, as originally authorized, and (2) 50,000 distributed and returned units, drawn from defendants' entire inventory of returned Similac. In this way, defendants note that no category of returned Similac will be systematically excluded from the sample.

Lastly, defendants note that they have not approached plaintiffs in the *Brandner* lawsuit here

with a proposed plan of preservation because it has been occupied with filing and confirming this Court's order in the eight sister courts.

### D. New Jersey Plaintiffs' Supplemental Memorandum of Points and Authorities in Support of Motion for Reconsideration to Modify This Court's June 16, 2011 Order

Plaintiffs argue that after defendants instructed consumers to return opened, tainted containers of the Similac-brand infant formula at issue in this case, it has now been disclosed that defendants failed to take adequate steps to preserve that critical evidence. Plaintiffs contend that by their own admission, defendants can not now identify the consumer associated with any specific unit of returned product. Plaintiffs assert that also by their own admission, defendants have allowed all of the returned product, whether opened, sealed, returned by consumers, by wholesalers or by retailers, to be improperly commingled, which presents further implications for the preservation of evidence.

Plaintiffs note that in their opposition, defendants offered a compromise to ensure preservation of 50,000 undistributed units and 50,000 distributed and returned units. Plaintiffs argue that while this is a step in the right direction, it still fails to address whether all of the product returned opened is evidence of injury to the putative class members.

Ultimately, plaintiffs request clarification that the Court's earlier order not be read to somehow serve as any sort of immunity from a claim of spoliation and that defendants retain a better representative sample of the recalled Similac. Plaintiffs do not expect defendants to retain all Similac. Rather, plaintiffs contend, defendants must preserve the opened containers of Similac that were returned to them as they are evidence of class member damages.

### E. Defendants' Supplemental Memorandum Regarding Plaintiffs' Motion for Reconsideration of This Court's Order Regarding Inventory Reduction

7

Defendants note that at oral argument, plaintiffs argued that (1) defendants misrepresented the scope of the alleged insect problem at its Sturgis, Michigan facility, and (2) the United States Food and Drug Administration ("FDA") ordered defendants to maintain recalled Similac in a manner different from the manner in which defendants have maintained it, and in particular, not to "commingle" returned product.

Defendants deny that they "misrepresented" the extent of the insect presence at its Sturgis facility at any time.  Defendants contend that the scope of the alleged insect presence at the Sturgis facility has no bearing on whether a protective order authorizing defendants' inventory reduction is appropriate.  Defendants argue that they have proposed to retain a random sample far larger than necessary to attain statistical significance.

Citing the letter from the FDA, defendants maintain that the FDA's sole concern about the manner in which the returned Similac was stored was that it be "separat[ed] from acceptable materials so it [would] not inadvertently be used or shipped."  Defendants argue that they complied with the FDA's instruction by storing the returned units in secure warehouses that are not involved in the product distribution chain.  Defendants also note that the FDA urged defendants to "immediately" make plans to destroy the product.  Because the FDA was concerned with the product's destruction, defendants maintain that it would be "nonsensical" for the FDA to concern itself with the returned product's storage.

### III.    Law and Analysis

The Federal Rules of Civil Procedure do not formally recognize a motion to reconsider *in haec verba*.  *See Pryor v. United States Postal Serv.*, 769 F.2d 281, 285 (5th Cir. 1985).

Nevertheless, the Fifth Circuit has held that a motion for reconsideration may be classified under either Rule 59 or Rule 60, depending on the time of filing. *See id.; see also Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). Because plaintiffs filed this motion after the 28-day cut-off for a motion to reconsider under Federal Rule of Civil Procedure 59(e), Rule 60 is applicable.

Under Rule 60(b), a court may reconsider an earlier order for (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly-discovered evidence that could not have been discovered with due diligence in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or other misconduct, (4) the order is void; (5) the order has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or vacated, or it is no longer equitable for the order to have prospective application; or (6) any other reason justifying relief from the operation of the order. Fed. R. Civ. P. 60(b). The sixth element is a "catch-all" factor that requires the mover to show extraordinary circumstances that justify reconsideration. *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002) (citations omitted). Here, given plaintiffs' arguments and factual assertions, the only applicable factor that potentially warrants reconsideration is the sixth factor of Rule 60(b).

Reconsideration of an order is an extraordinary remedy that courts use only sparingly. Wright, Miller & Kane, *Federal Practice & Procedure*: Civil 2d § 2810.1, p. 124; *Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170, 1998 WL 43217 (E. D. La. Feb. 3, 1998); *Bardwell v. George G. Sharp, Inc.*, Civ. A. No. 93-3590, 1995 WL 517120 (E. D. La. Aug. 30, 1995). A motion to reconsider should *not* be used to relitigate old issues that were resolved to the movant's

9

dissatisfaction, to advance new theories, or simply to secure a rehearing.  *See Fontenot v. Mesa Petroleum,* 791 F.2d 1207, 1219 (5th Cir. 1986); *Clay v. Daichi Shipping,* No. Civ. A. 97-3630, 2000 WL 6269 (E. D. La. Jan. 5, 2000); *Campbell v. St. Tammany Parish School Bd.*, No. Civ. A. 98-2605, 1999 WL 777720 (E. D. La. Sept. 29, 1999).

The Court finds that plaintiffs have not demonstrated extraordinary circumstances that justify reconsideration of this Court's earlier order.  At least five sister courts have already agreed with the Court's earlier order, one specifically noting that the Court decided the motion correctly on the merits.  In its earlier order, this Court cited the case law on which it relied and specifically agreed with the case law in which courts have held similarly and approved of similar product-retention plans.   Plaintiffs submit no new arguments to the Court and only re-assert their earlier arguments – arguments that this Court has rejected.  The Court's review of the pleadings here reveals that defendants have consistently contended that plaintiffs will be unable to certify the class on the ground that the individual plaintiffs will need to demonstrate that their specific product was contaminated.  Contrary to plaintiffs' assertions, that is not a new argument in this lawsuit and is not dispositive of this Court's earlier conclusion.

Notwithstanding this ruling, however, the Court will amend its earlier order in line with defendants' compromise that seeks to allay at least some of the New Jersey plaintiffs' fears. Accordingly, the Court orders defendant to now retain (1) 50,000 undistributed units, as originally authorized, and (2) 50,000 distributed and returned units, drawn from defendants' entire inventory of returned Similac.

The Court also notes that its earlier order requires that counsel for defendants and for plaintiffs shall work together to determine the method to retain the best representative sample of

recalled product.  The Court clarifies that defendants shall cooperate in this endeavor with counsel for all other plaintiffs in the putative class actions pending in this Court's sister courts.  Any dispute between counsel regarding the selection of the best representative sample shall be brought to the Court's attention, and the Court will hold a conference, should circumstances so warrant.

The Court also amends its earlier order to the extent that it clarifies that nothing in that order condones or immunizes any alleged spoliation by defendants that occurred before the issuance date of that order.

## IV.     Conclusion

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that the New Jersey Plaintiffs' Motion for Reconsideration to Modify This Court's June 16, 2011 Order [Doc. #109] and the Motion for Reconsideration of This Court's June 16, 2011 Order [Doc. #110] are GRANTED IN PART to the extent that the Court amends its earlier Order dated June 16, 2011 [Doc. #76] as outlined above.  In all other respects, the motions are DENIED.

New Orleans, Louisiana, this 13th day of October, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

11