UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


KATHLEEN A. BRANDNER                    CIVIL ACTION


VERSUS                                  NO: 10-3242


ABBOTT LABORATORIES, INC., ET AL.       SECTION: R(3)



**ORDER AND REASONS**

Before the Court are several motions related to class
certification in this matter.  Plaintiff Kathleen Brandner filed
a motion for class certification[1] which she later supplemented
with an amended memorandum.[2]  Defendant Abbott Laboratories
opposes the motion to certify class[3] and filed a separate motion
to deny class certification, or in the alternative to strike
class allegations.[4]  Because Brandner has not met her burden of
establishing that the proposed class meets the predominance and
superiority requirements of Federal Rule of Civil Procedure 23,

---

[1]    R. Doc. 85.

[2]    R. Doc. 132.

[3]    R. Doc. 135.

[4]    R. Doc. 93.

1

the Court DENIES Brandner's motion for class certification.  The
Court GRANTS Abbott's motion to deny class certification.


I.   **BACKGROUND**

    Kathleen Brandner filed this suit against defendant Abbott
Laboratories in connection with Abbott's September 2010 recall of
Similac brand infant formula.  On September 22, 2010, Abbott
announced a nationwide recall of all Similac powdered infant
formula produced at a facility where beetles were observed in a
batch of finished product.[5]  Brandner asserts that since April
2010, she purchased, and her child consumed, Similac that was
part of the product recall.[6]  Brandner contends that during this
period her child suffered gastrointestinal problems consistent
with ingesting the recalled products and that before April 2010
the child had not suffered from similar symptoms.[7]  Brandner
further contends that the child's symptoms required numerous
visits to a physician and that she experienced severe emotional
distress upon learning she had fed her child infant formula
containing beetles and beetle larvae.[8]  Brandner asserts claims
against Abbott for (1) violation of the Louisiana Products

---

[5]    R. Doc. 93.

[6]    R. Doc. 52 at ¶14.

[7]    *Id.* at ¶17.

[8]    *Id.* at ¶17(a).

2

Liability Act, La. Rev. Stat. §§ 9:2800.51, *et seq.*, for a manufacturing product that was unreasonably dangerous in construction and composition and that had inadequate warnings; and (2) the Louisiana Civil Code articles on redhibition, La. Civ. Code arts. 2520, *et seq.*[9] She had originally asserted a claim of *actio de in rem verso*, which the Court dismissed without prejudice.[10] On July 26, 2011, this Court consolidated Brandner's case with Case No. 11-011, filed by John and Jennifer O'Neil.[11]

Brandner seeks to sue on behalf of herself and a class of similarly situated plaintiffs defined as:

> All persons in Louisiana who purchased Similac® products bearing the recall lot numbers as stated on Exhibit "A" attached hereto, during the Similac® Recall Purchase Period.  The "Similac® Recall Purchase Period" means the period of time commencing on or about September 22, 2010. Excluded from Class are any directors, officers or employees of Defendants, members of their immediate families, and any director, officer or employee of any entity in which Defendants have a controlling interest, and legal representatives, heirs, successors, or assigns of any such persons.[12]

Brandner sought "injunctive relief prohibiting Defendants from selling contaminated Similac infant formula in the future, and

---

[9]    *Id.*

[10]   R. Doc. 56.

[11]   R. Doc. 29.

[12]   R. Doc. 52 at ¶20.

3

requiring the Defendants to put in place sufficient precautions such that its Similac infant formula is not contaminated in the future."[13]   She also sought to certify an injunctive class under Federal Rule of Civil Procedure 23(b)(2).[14]   The Court granted Abbott's motion for a judgment on the pleadings with respect to Brandner's individual and class claims for injunctive relief.[15] Brandner still seeks monetary damages and moves to certify a class on her products liability and redhibition claims under Federal Rule of Civil Procedure 23(b)(3).

## II.   DISCUSSION

### A.  Elements and Standards of Rule 23

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.  To be certified, a class must satisfy the following threshold requirements of 23(a): (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality ("named parties' claims or defenses are typical ... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interest

---

[13]   *Id*. at ¶27.

[14]   *Id*.

[15]   R. Doc. 145.

of the class"). *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

In addition, the class must satisfy one of the grounds listed in Rule 23(b). *Dukes*, 131 S. Ct. at 2548. Rule 23(b)(3), under which Brandner seeks certification, imposes two prerequisites, predominance and superiority:

> "questions of law or fact common to class members [must] predominate over any questions affecting only individual members, and . . . a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 615; *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). Rule 23(b)(3) also includes a non-exhaustive list of factors pertinent to findings of predominance and superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Further, the Court must consider how the case would actually be tried as a class action to determine whether manageability problems prevent class litigation from being the superior mode of adjudication. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740, 743–45 (5th Cir. 1996).

As the party seeking class certification, plaintiffs bear the burden of showing that all of the criteria for certification are met. *See Unger*, 401 F.3d at 320.  Class certification is soundly within the district court's discretion, and the court "must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Castano*, 84 F.3d at 740 (5th Cir. 1996). "Rule 23 requires the Court to 'find,' not merely assume, the facts favoring class certification." *Unger*, 401 F.3d at 321.

## B.  Louisiana Products Liability Act

### 1. *Standard*

In considering a proposed class, the court must identify "the substantive issues that will control the outcome, assess[] which issues will predominate, and then determin[e] whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 555 (5th Cir. 2011)(quotations omitted).  Brandner contends that Abbott is liable under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. § 9:2800.51, *et seq.*, for damages caused by its defective product.[16]  To prove a claim under the LPLA, the plaintiff must establish:

---

[16]    R. Doc. 52 at ¶35.

6

(1) that the defendant is a manufacturer of the product;
(2) that the claimant's damage was proximately caused by
a characteristic of the product; (3) that this
characteristic made the product "unreasonably dangerous";
and (4) that the claimant's damage arose from a
reasonably anticipated use of the product by the claimant
or someone else.

*Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 260-61

(5th Cir. 2002)(citing La. Rev. § 9:2800.54(A)).  To trigger

liability, a product must be unreasonably dangerous in

construction or composition, unreasonably dangerous in design,

unreasonably dangerous on account of an inadequate warning, or

unreasonably dangerous for failure to conform to an express

warranty.  La. Rev. § 9:2800.52-58.  "To maintain a claim that a

product is 'unreasonably dangerous' in its 'construction or

composition' under the LPLA, a plaintiff must show that, 'at the

time the product left its manufacturer's control, the product

deviated in a material way from the manufacturer's specifications

or performance standards for the product or from otherwise

identical products manufactured by the same manufacturer.'"  *Reed*

*v. Biomet Orthopedics Inc.*, 318 Fed. Appx. 305, 307 (5th Cir.

2009)(citing La. Rev. § 9:2800.55).  If the plaintiff proves a

claim under the LPLA, the LPLA authorizes the plaintiff to

recover "all damage caused by [the] product."  La. Rev. Stat. §

9:2800.53(5).  This includes damages for "pain and suffering,

medical expenses, damages to property, other than to the product

itself, and loss of consortium."  *Chevron USA, Inc. v. Aker*

*Maritime, Inc.*, 604 F.3d 888, 900 (5th Cir. 2010)(citing John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La. L. Rev. 565, 579-80 (1989)).

Brandner also asserts that she suffered emotional distress as a result of learning that her child ingested contaminated Similac.[17]  Under Louisiana tort law, "in the absence of a manifest physical injury," a plaintiff may recover damages for emotional distress only by showing "a particular likelihood of genuine and serious mental distress arising from special circumstances."  *Bonnette v. Conoco, Inc.*, 837 So.2d 1219, 1235 (La. 2003).  In contamination cases, "Louisiana law does not permit a party to maintain an action for mental anguish based on an alleged 'fear' of contracting a disease in the future absent a showing that the party was actually exposed to a contaminated agent."  *Nesom v. Tri Hawk Int'l*, 985 F.2d 208, 210 (5th Cir. 1993)(citing *Broussard v. Olin Corp.*, 546 So.2d 1301 (La. App. 3d Cir. 1989)).

Abbott attacks Brandner's certification motion on the grounds that she fails to satisfy the commonality, typicality, and adequacy of representation requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3).  Because the Court finds that Brandner's LPLA claim fails the

---

[17]     *Id.* at ¶1.

8

predominance and superiority requirements of Rule 23(b)(3), the Court need not address Abbott's other arguments.

2. *Predominance*

Abbott argues that the predominance requirement cannot be met because determining putative class members' claims would entail "a detailed examination of each litigant's case."[18]  Abbott contends that only those who purchased contaminated Similac could assert claims against Abbott, and of those putative class members, each would have to demonstrate the presence of a defect, causation, and damages.  Abbott maintains that such an inquiry precludes a finding that issues common to the class predominate over questions affecting individual members.  In response, Brandner asserts conclusorily that the "issue of liability and the extent of the defendants' bad conduct is an all-or-nothing proposition,"[19] which renders Abbott's conduct "without a doubt the predominate issue in this matter."[20]  She makes no suggestion of how she would try this case and does not address the legal requirements of an LPLA claim.

The Court finds that individual issues predominate over issues common to the class.  First, despite Brandner's argument

---

[18]    R. Doc. 93-1 at 19.

[19]    R. Doc. 85-1 at 17.

[20]    *Id.*

9

to the contrary,[21] the LPLA requires a plaintiff to demonstrate
that the product was unreasonably dangerous when it left the
manufacturer's control.  *See* La. Rev. Stat. § 9:2800.55.  Courts
routinely deny claims when the plaintiff cannot establish this
element of an LPLA cause of action.  *See, e.g., Reed v. Biomet
Orthopedics Inc.*, 318 Fed. Appx. 305, 307 (5th Cir. 2009)(summary
judgment appropriate for defendant when plaintiff failed to
demonstrate a defect in construction or composition of the
product); *Woodling v. Hubbell Inc.*, 35 Fed. Appx. 386, at *2 (5th
Cir. 2002)(burden on plaintiff to prove a defect exists when
product leaves manufacturer's control); *La. Farm Bureau Mut. Ins.
Co. v. Lowes Home Ctrs. Inc.*, 149 F.3d 1174 (5th Cir. 1998)
(plaintiffs denied relief because they failed to demonstrate that
defective wire was in machine when it left GE's control); *Kramer
v. Petroleum Helicopters, Inc.*, 999 So.2d 101 (La. App.
2008)(affirming dismissal under LPLA when plaintiff failed to
establish unreasonably dangerous defect in construction or
composition of a rotor blade).  Whether each class member

---

[21]     R. Doc. 93-1 at 9.  Brandner contends that Abbott
"stacked the deck in its favor" in arguing that each member must
demonstrate a defect because Abbott "convinced hundreds of
Louisianans to return the product to Abbott, and then argued to
the Court that it was necessary to destroy all of that returned
product."  R. Doc. 119 at 8-9.  The Court notes, however, that
the protective order allowing Abbott to destroy product pertains
only to "unopened, uncompromised units that were recalled" and
units never distributed to the public.  R. Doc. 76, R. Doc. 131.
Brandner's argument therefore lacks merit.

purchased contaminated Similac is subject to individualized, not collective proof. *See* discussion, *infra*.

Second, each putative class member must establish that Abbott's actions were a proximate cause of his or her injury. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997)(citing La. Rev. Stat. § 9:2800.54(A))("Before liability may be imposed, under the LPLA, a plaintiff must show proximate causation - a link between the actions of a manufacturer and the injury-causing product."). Brandner's LPLA cause of action would require proof of medical causation, which has two components: "general causation, which establishes that a substance has the capability of causing the injury or disorder in humans, and specific causation, which focuses upon whether the substance caused a particular injury to a particular individual." *Ridgeway v. Pfizer, Inc.*, No. 09-2794, 2010 WL 1729187, at *2 (E.D. La. Apr. 27, 2010)(citing *Pick v. Am. Med. Sys., Inc.*, 958 F. Supp. 1151, 1164 (E.D. La. 1997)). The Court need not determine predominance with respect to general causation, because proving specific causation would require a determination of "an individual's family and medical history; age; gender; diet; . . . the timing of ingestion of the product; . . . whether that individual suffered an injury, when the injury occurred, the type of injury suffered, and the number of occurrences of injury; the likelihood of injury; and/or the foundation as to whether a

justifiable fear of injury exists." *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006)(citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 631-32 (W.D. Wash. 2002)).  This highly individualized inquiry leads the Court to conclude that issues common to the class do not predominate.  *See Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 557 (5th Cir. 2011)(no predominance in dust exposure action because "even among the named class representatives, significant disparities exist, in terms of exposure, location, and whether mitigative steps were taken"); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006)(no predominance in a single accident case when each plaintiff "must meet his or her own burden of medical causation"); *Vioxx*, 239 F.R.D. at 459 ("individualized factual issues concerning specific causation" predominated in products liability action).  *See also In re Abbott Labs., Inc., Similac Prods. Liab. Litig.*, MDL No. 2211, 763 F. Supp. 2d 1376 (Feb. 4, 2011)(individual facts will predominate over alleged common fact questions in Similac litigation, including fact of "any injuries that consumption of the product caused").

Third, all plaintiffs who claim emotional distress (an issue that Brandner contends is common to the class) would have to establish not only the distress but also the attendant damages. To show compensable distress, each putative class member would

have to show "a particular likelihood of genuine and serious mental distress arising from special circumstances." *Bonnette*, 837 So.2d at 1235 (citing *Moresi v. State Dept. of Wildlife & Fisheries*, 567 So.2d 1081 (La. 1990)). The damages issue requires a determination of whether plaintiffs sought medical treatment, psychiatric treatment, the degree to which plaintiffs manifested generalized fear, and the severity of plaintiffs' emotional distress. *See Howard v. Union Carbide Corp.*, 897 So.2d 768, 774 (La. App. 2005). Because the determination of whether each member suffered emotional distress turns on a highly individualized assessment, questions of fact regarding individual members predominate over common issues of fact.

Regarding damages, it is true that "the necessity of calculating damages on an individual basis will not necessarily preclude class certification." *Steering Comm.*, 461 F.3d at 602. "Class treatment, however, may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation." *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003). Establishing emotional damages would entail the exact type of "mini-trials" the Fifth Circuit has cautioned against. *See id.* Indeed, "[t]he very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an

13

individual, not class-wide, remedy." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 417 (5th Cir. 1998). *See also In re Katrina Canal Breaches Litig.*, 401 Fed. Appx. 884, 887 (5th Cir. 2010)(class certification not appropriate when individualized issues, such as the nature and extent of a class member's damages, will predominate).

### 3. *Superiority*

The Court also finds that Brandner has made no showing of how she would try these claims on a class-wide basis. She thus fails to demonstrate how she would overcome the manageability problems posed by claims that require such disparate proof. Accordingly, she has not satisfied the requirement that a class action be superior to other available methods of adjudicating the controversy.

For the foregoing reasons, the Court finds that Brandner cannot maintain a class under the LPLA.

## C.  Redhibition

### 1. *Standard*

It is well settled that the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995)(citing La. Rev. Stat. § 9:2800.52).

Plaintiffs may not rely on negligence, strict liability, or breach of express warranty as a viable independent theory of recovery against a manufacturer. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997).  Redhibition, however, remains available against a manufacturer to recover economic loss. *Id.; Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002)("Courts have interpreted the LPLA as preserving redhibition as a cause of action only to the extent the claimant seeks to recover the value of the product or other economic loss.").

A plaintiff suing in redhibition for recission must prove, *inter alia*, that "(1) the thing sold is absolutely useless for its intended purposes or that its use is so inconvenient that it must be supposed that he would not have bought it had he known of the defect; [and] (2) that the defect existed at the time he purchased the thing, but was neither known [n]or apparent to him . . . ." *Alston v. Fleetwood Motor Homes of Ind.*, 480 F.3d 695, 699 (5th Cir. 2007)(citing *Dalme v. Blockers Mfd. Homes, Inc.*, 779 So.2d 1014, 1028 (La. App. 2001); La. Civ. Code. Ann. art. 2520); *Morris N. Palmer Ranch Co. v. Campesi*, 647 F.2d 608, 613 (5th Cir. 1981)(citing La. Civ. Code. Ann. art. 2520).  Proof of the defect may be made by direct or circumstantial evidence. *Id.; Rey v. Cuccia*, 298 So.2d 840, 845 (La. 1974).

The Fifth Circuit has held that redhibition damages are limited to economic loss, which includes "the cost of the product, and the loss of income or profits resulting from the loss of or inability to use the product as intended." *Aker Maritime, Inc.*, 604 F.3d at 900-01. In an action brought under both the LPLA and the redhibition articles, a plaintiff may recover attorney fees under the redhibition articles, but those fees are limited to the portion of liability in redhibition. *Aker Maritime, Inc.*, 604 F.3d at 901.

The Louisiana Supreme Court has not yet reached the issue of whether the LPLA precludes the recovery of nonpecuniary damages in redhibition. *Aucoin v. Southern Quality Homes, LLC*, 984 So.2d 685, 697 n.14 (La. 2008). Other Louisiana courts, however, have held that the LPLA provides the exclusive remedy for damages resulting from personal injury and that redhibition articles provide exclusively for economic loss. *DeAtley v. Victoria's Secret Catalogue, L.L.C.*, 876 So.2d 112, 115 (La. App. 2004)(attorney fees are available in redhibition only "insofar as those fees relate to the recovery of purely economic loss"); *Monk v. Scott Truck & Tractor*, 619 So.2d 890, 893 (La. App. 1993)("redhibition survives only for economic loss"). If nonpecuniary damages *are* available, each plaintiff would have to show that he or she entered the contract to "gratify a significant nonpecuniary interest." *Young v. Ford Motor Co.,*

16

*Inc.*, 595 So.2d 1123, 1133 (La. 1992)(citing La. Civ. Code art. 1998).  Put another way, "damages for mental anguish can only be awarded when a 'principal or exclusive object' of the purchase is to satisfy a nonpecuniary interest." *Alston v. Fleetwood Motor Homes of Ind.*, 480 F.3d 695 at 702 (citing *Young*, 595 So.2d at 1130). *See, e.g., Davis v. Sweeney*, 31 So.3d 1184, 1188 (La. App. 2010)(plaintiff established nonpecuniary interest in ski boat used for camping, cruising, skiing, and other "pleasurable family experiences"); *Austin Homes, Inc. v. Thibodeaux*, 821 So.2d 10, 18-19 (La. App. 2002)(plaintiffs established that they suffered nonpecuniary loss from damage to a house they commissioned when house was a "dream house" for which they originally had "beautiful plans"). *Cf. Morrison v. Allstar Dodge, Inc.*, 792 So.2d 9, 17 (La. App. 2001)(nonpecuniary interest not established when plaintiff purchased her car because "she needed something reliable and dependable to transport her children back and forth from daycare and herself to and from work").

## 2. *Brandner's Claims are not Moot*

As a preliminary matter, Abbott argues that the tender of a refund moots Similac purchasers' economic loss claims.  Article 2545 of the Louisiana Civil Code defines liability for a manufacturer who sells a product with a redhibitory defect.  La.

Civ. Code art 2545. A manufacturer is liable "for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees." *Id.* Abbott contends that its reimbursement program moots the redhibition claim. Under this program, all customers received a "$15 coupon toward the future purchase of any Similac product."[22] Customers who purchased containers of Similac that were less than 13 ounces and who returned less than $30 of product received retailer checks for the future purchase of any Similac product.[23] All other customers received bank checks.[24] The amount of the reimbursement check was determined based on a standardized price schedule.[25] Although these offers might address the "return of the price" portion of redhibition damages, Abbott provides no evidence that it offered plaintiffs interest or reimbursement of reasonable expenses. Further, the cases Abbott relies on do not support its argument.

The Fifth Circuit cases Abbott cites do not address Abbott's argument. The Fifth Circuit has held that a Federal Rule of

---

[22]    R. Doc. 93-2, Boogard Declaration, at ¶11.

[23]    *Id.* at ¶13.

[24]    *Id.*

[25]    *Id.* at ¶15.

Civil Procedure 68 offer of judgment that includes full damages and costs will render a plaintiff's claim moot. *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 502 (5th Cir. 2005)(citing *Krim v. pcOrder.com, Inc.*, No. A-00-CA-776-SS, 2003 WL 21076787, at *3 (W.D. Tex. May 5, 2003))(noting that the offer was made pursuant to Rule 68). Abbott provides no evidence that it tendered a Rule 68 offer of judgment. Further, as discussed above, Abbott presents no evidence that it offered plaintiffs full damages with interest for the redhibition claim.

Abbott also asks the Court to consider *Sandoz v. Cingular Wireless LLC.*, 553 F.3d 913 (5th Cir. 2008). *Sandoz* does not stand for the proposition that a refund of the purchase price moots a plaintiff's claim; rather, *Sandoz* provides that in a Fair Labor Standards Act case, "[i]f the court ultimately grants the motion to certify, then the Rule 68 offer to the individual plaintiff would not fully satisfy the claims of everyone in the collective action; if the court denies the motion to certify, then the Rule 68 offer of judgment renders the individual plaintiff's claims moot." *Id.* at 920-21. Despite the court's likening of the FLSA to Rule 23, *id.* at 920, *Sandoz* does not speak to the issue currently before this Court. Furthermore, Abbott's reference to *McGoldrick Oil Co. v. Campbell, Athey & Zukowski*, does not inform the issue of mootness in a redhibition claim. In *McGoldrick*, the Fifth Circuit held nonjusticiable a

19

document dispute in which defendants voluntarily produced
documents requested by plaintiffs, and plaintiffs rejected those
documents. *McGoldrick*, 793 F.2d 649, 653 (5th Cir. 1986).

The Court does not find the other cases cited by Abbott to be
helpful, either.  The two Seventh Circuit cases concern
plaintiffs whose claims were held to be moot because they were
offered the full amount of damages they claimed. *Gates v. City
of Chicago*, 623 F.3d 389, 413 (7th Cir. 2010)(defendant tendered
the full amount plaintiffs requested in restitution before
plaintiffs added restitution to their complaint, which mooted
plaintiffs' claim); *Holstein v. City of Chicago,* 29 F.3d 1145,
1147 (7th Cir. 1994)(plaintiff cannot reject an offer of full
damages and then proceed to trial); *Rand v. Monsanto Co.,* 926
F.2d 596, 598 (7th Cir. 1991)(claim mooted when defendant offered
the plaintiff "the full amount by which answers to
interrogatories assert that [he] was injured, plus the costs of
the suit").  In addition, the Third Circuit in *Symczyk v. Genesis
HealthCare Corp.*, recognized that "whether or not the plaintiff
accepts the offer, no justiciable controversy remains when a
defendant tenders an offer of judgment under Rule 68 encompassing
all the relief a plaintiff could potentially recover at trial."
656 F.3d 189, 195 (3d Cir. 2011)(citing *Rand*, 926 F.2d at 598).
These cases, which concern tender of the full damages amount, as
well as Rule 68, do not inform the issue currently in front of

the Court, where defendants have not offered the full damages to plaintiffs.

*3. Redhibition Analysis*

Brandner's redhibition claims nevertheless cannot be certified as a class because common issues do not predominate, and a class action is not a superior mechanism for trying these claims.  Brandner contends that everyone who purchased Similac from the recalled lots suffered an economic injury.  As with Brandner's claim under the LPLA, Abbott argues that in order for putative class members to have a redhibition claim, they must show a defect in the product they purchased and cannot rely on the fact that the product line contained defects.

Brandner argues that Abbott admitted the existence of a redhibitory defect in all of the units of the recalled lots because the heading of Abbott's press release announcing the recall stated that "Certain Similac Brand Powder Infant Formulas . . . Did Not Meet Its Quality Standards."[26]  In short, Brandner asserts that this statement is sufficient to establish that every unit in the recall suffered a redhibitory defect.  The recall notice is far from an admission that every unit contained a redhibitory defect.  Indeed, the press release actually states that there is a "remote possibility" of contamination in the

---

[26]    R. Doc. 132 at 4; R. Doc. 132-4 at 1.

products subject to recall.  In order for a plaintiff to prevail in a redhibition action, the plaintiff must establish the existence of an actual defect at the time of sale.  *Sills v. Magnolia Estates, Inc.*, No. 06-1654, 2008 WL 313816, at *2 (W.D. La. Feb. 4, 2008)(citing *Rey*, 298 So.2d at 843)("A buyer must prove that the defect existed at the time of sale"); *Mauer v. Heyer-Schulte Corp.*, No. Civ.A. 92-3485, 2002 WL 31819160, at *5 (E.D. La. Dec. 13, 2002)(citing La. Civ. Code art. 2520); *Whitehead v. Humphrey*, 954 So.2d 859, 862 (La. App. 2007)("buyer need not prove the underlying cause of the redhibitory defect involved, but only that the defect existed").  This defect must be a "physical imperfection or deformity."  *Levin v. May*, 887 So.2d 497, 503 (La. App. 2004).  *See also PPG Indus., Inc. v. Indus. Laminates Corp.*, 664 F.2d 1332, 1336 (5th Cir. 1982)(examples of redhibitory defects are a cracked engine block, termite damage, inadequate building foundation, and a contaminated popsicle); *Young v. Ford Motor Co., Inc.*, 595 So.2d 1123, 1124 (La. 1992)(redhibitory action for defective pickup truck); *Morvant v. Himel Marine, Inc.*, 520 So.2d 1194, 1197 (La. App. 1988) (redhibitory action based on defective transom that caused boat to leak).  That Brandner has not shown that she can prove that each class member purchased a defective product with common proof - and indeed claims that she need not make such a showing - persuades the Court that common issues of fact do not

predominate. *See Green v. Green Mountain Coffee Roasters, Inc.*, No. 11-2067, 2011 WL 6372617, at *9 (D.N.J. Dec. 20, 2011)(in implied warranty of merchantability case, putative class failed predominance requirement because the court would have had to undertake an individualized inquiry as to whether each plaintiff purchased a defective product).

Moreover, Brandner's expert does not convince the Court otherwise.[27] Brandner relies on the report of Dr. John James Farmer, III, a Ph.D microbiologist and former Senior Scientist at the Centers for Disease Control and Prevention, who is now a paid consultant. Farmer notes that "Abbott found adult beetles and larvae in eight of the 21 lots [30,486 units] it sampled,"[28] with an overall rate of contamination of the tested samples of 0.16%.[29] Although Farmer criticizes Abbott for testing a small sample, Farmer himself concludes that "[t]here is no scientific way to evaluate contamination in 117,390,152 units that were recalled but not tested."[30] This conclusion fatally undermines Brandner's arguments about the certifiability of the proposed class. Brandner, not Abbott, has to establish contamination of

---

[27] *See* R. Doc. 132-1, Affidavit of John James Farmer, III, Ph.D.

[28] *Id.* at ¶15.

[29] R. Doc. 132-1, Ex. 1 at 5.

[30] R. Doc. 132-1 at ¶18.

the recalled units, and it must do so by common proof to certify
a claim.  Farmer simply has not opined that every unit of Similac
was contaminated, nor has he provided the Court with any
methodology to prove that the recalled units were defective by
common proof.

Brandner also suggests that she can establish a class-wide
redhibitory defect without examining each unit sold to the
putative class because Abbott "admitted" its food was adulterated
under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301,
*et seq.* ("FDCA"), and that this adulteration constitutes a
redhibitory defect.[31]  In support of this contention, Brandner
relies on Farmer's affidavit and Abbott's press release
announcing the recall.  The Court finds this argument unavailing
for several reasons.  First, under the relevant definition of
"adulterated" in the FDCA, a food product is adulterated, *inter
alia*, if it "has been prepared, packed, or held under insanitary
conditions whereby it *may have become* contaminated with filth, or
whereby it *may have been* rendered injurious to health."  21
U.S.C. § 342(a)(1) (emphasis added).  Thus it is not necessary
that a unit of Similac actually be contaminated to be considered
"adulterated" under the FDCA.  Second, there is no mention of
adulteration in the press release, and the only mention of the

---

[31]   R. Doc. 132 at 4.

24

FDA is that Abbott consulted with the FDA about the recall.[32]
The FDA characterized the recall as "voluntary" and issued no
finding that all of the recalled units were adulterated, much
less that they contained filth or beetles.[33]

Finally, the Court finds Farmer's assertions about
adulteration to be without merit.  His affidavit quotes the
adulteration statute and concludes without further ado that all
117,420,638 units of Similac were adulterated.[34]  Significantly,
he does not identify the section of the statute he relies on.  As
the statute would render product adulterated if it were kept
under conditions where it *might* become contaminated, labeling it
adulterated, without more, does not equate to contamination.  Nor
does Dr. Farmer establish any likelihood that units in the
recalled lots contained "filth" or beetles.  He cites only a
handful of customer complaints in addition to what Abbott itself
uncovered.  This is not evidence of class-wide contamination.
Finally, Farmer's opinion that there may also be microscopic
particles of contamination yet undiscovered is totally
unquantified and does not meet Brandner's burden.

---

[32]    *Id.*

[33]    R. Doc. 132 at 17.

[34]    R. Doc. 132-1 at ¶¶19-20.

Brandner also argues that the Similac was defective because it was not kosher, even though it was labeled as such.[35] Brandner does not cite, nor could the Court find, any cases to support this contention.  Although Brandner couches this argument in redhibition, the Court finds it much closer to a claim for breach of express warranty, which is precluded by the LPLA.  *See Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002).  Moreover, the Court notes that Brandner has never raised this argument in the complaint, and nothing in the class definition suggests that this is an issue that applies to the whole class.  This argument does not change the Court's conclusion that the proposed class is not certifiable because common issues do not predominate.

Brandner has also failed to show that a class action is a superior method of adjudicating these claims.  The need to prove contamination on a plaintiff-by-plaintiff basis makes the proposed class distinctly unmanageable.

For the foregoing reasons, the Court finds that Brandner cannot maintain a redhibition class.  Because the redhibition class does not satisfy the Rule 23(b)(3) requirements, the Court need not discuss Rule 23(a).

---

[35]    R. Doc. 132 at 5.

**III.    CONCLUSION**

For the foregoing reasons, the Court DENIES Brandner's motion for class certification and GRANTS Abbott's motion to deny class certification.


New Orleans, Louisiana, this 23rd day of January, 2012.


_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE