UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KATHLEEN A. BRANDNER | CIVIL ACTION |
| VERSUS | NO. 10-3242 |
| ABBOTT LABORATORIES, INC., ET AL. | SECTION "R" (3) |

ORDER

On February 29, 2012, Defendants' Motion for Final Authorization of Inventory Reduction [Doc. #150] and the Georgia Plaintiffs' Memorandum of Points and Authorities Concerning this Court's October 13, 2011 Order [Doc. #157] came on for oral hearing before the undersigned. Present were David Scalia, Douglas Plymale and Stephen Kreller on behalf of plaintiffs, Don McKinney, William Cavanaugh and Jonah Knobler on behalf of defendants and Jonathan Johnson on behalf of the Georgia plaintiffs. Having reviewed the motions, the oppositions, the case law and the parties' oral arguments, the Court rules as follows.

**I.     Background**

The allegations are as follow. Defendants formulate, design and market Similac products that it promotes as safe for children. On September 22, 2010, defendants recalled certain Similac-powder product lines offered in plastic containers and certain Similac-powder product lines offered in sizes such as 8-ounce, 12.4-ounce and 12.9-ounce cans. Defendants had discovered that such products were potentially contaminated with beetle parts and/or beetle larvae. Plaintiff had

purchased and used such a Similar product before defendants recalled it.  Plaintiff alleges claims of negligence, strict liability, intentional misrepresentation, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, unjust enrichment and injunctive and declaratory relief.

On June 16, 2011, this Court granted in part defendant's motion for a protective order and allowed defendant to retain only (1) 50,000 unopened, uncompromised units that were recalled and (2) 50,000 units manufactured during the recall period at defendant's Sturgis, Michigan facility and never distributed to the public. [Doc. #76].  The Court ordered defendants to file this Court's order in all sister federal courts in which a similar class action was pending.  Seven federal courts have consented to and/or adopted this Court's Order.  Consent to the Court's Order remains pending in one court, the Northern District of Georgia.

Plaintiffs here and the plaintiffs in the New Jersey federal-court action sought reconsideration of the Court's Order dated June 16, 2011.  On October 13, 2011, the Court granted the motions for reconsideration in part, amending its earlier order to reflect that defendants maintain "(1) 50,000 undistributed units, as originally authorized, and (2) 50,000 distributed and returned units, drawn from defendants' entire inventory of returned Similac."  [Doc. #131 at p. 10]. Defendants now seek final authorization for that order.[1]

II.   **The Parties' Arguments**

    A.   **Defendants' Motion for Final Authorization of Inventory Reduction**

Defendants contend that they have conferred with counsel for the named plaintiffs in all of this Court's sister courts and have received no substantive objections to the specifics of its proposed

---

[1] On January 23, 2012, the District Court denied class certification.  [Doc. #149].

2

inventory-reduction protocol. Defendants note that to date, they have spent over $4.5 million to store and to secure the recalled inventory, which amounts to approximately $68,283.00 per week.

On December 22, 2011, defendants contacted the plaintiffs in all class actions that were still pending in federal court: here, the District of New Jersey and the Eastern District of New York.[2] In that correspondence, defendants outlined the procedure to dispose of the inventory. Pursuant to the protocol, a third-party business analytics company will develop a randomized sample of all of the recalled and unreleased Similac in defendants' custody and control; a third-party security firm will assure the integrity of the process; and the end result will be the preservation of 119,765 units. Only counsel for the plaintiff in New Jersey responded, stating that he needed more time to discuss the protocol with counsel for other plaintiffs. Counsel for the New Jersey plaintiffs has since voiced no objections.

Defendants note that while they were finalizing their proposed inventory reduction, a new lawsuit in the Norther District of Georgia was filed. *Knipe v. Abbott Labs., Inc.*, No. 1:11-cv-4112 (N.D. Ga.). Defendants also contacted counsel for the Georgia plaintiffs, even though they argue that because this Court's order required notice only to those plaintiffs in the actions pending at the time of the order, they were not required to do so. The Georgia plaintiffs refused to consent to the protocol.

Defendants contend that they have complied with this Court's order by working together with counsel for plaintiffs to develop the protocol. Defendants also argue that they filed the order in all of this Court's sister courts in which class actions were pending, and seven of those courts agree with

---

[2] Defendants note that now, only two putative class actions remain: in New York and Georgia.

this Court. Only the Georgia court has yet to rule. Defendants thus ask the Court to review the protocol, verify its acceptability and grant a protective order immediately upon the Georgia court's acceptance of this Court's order.

### B. Georgia Plaintiffs' Memorandum of Points and Authorities Concerning this Court's October 13, 2011 Order

The Georgia plaintiffs submit two pleadings to this Court, one the Court construes as a motion to stay this Court's ruling until the Georgia court rules on defendant's motion for a protective order, and one the Court construes as an opposition to the motion here.

The Georgia plaintiffs ask the Court to (1) postpone ruling here until the Georgia federal court rules; (2) consider the arguments raised in opposition to defendants' motion for a protective order in the Georgia court; or (3) order defendants to produce a proposed protocol to plaintiffs and allow plaintiffs 60 days to hire a statistical expert to evaluate the protocol.[3]

The Georgia plaintiffs advance the same arguments to the Georgia court that plaintiffs here advanced to this Court:

(1) The order here is insufficient to protect the interest of the Georgia plaintiffs because defendants argue that each putative class member will need to test their individual container of formula to prove exposure.

(2) Representative sampling is inappropriate for individually-opened containers that were returned based on defendants' instructions because the statistical websites that defendants used to create the protocol do not take into account such factors as recalled containers returned by consumers, recalled containers returned by

---

[3] The Georgia plaintiffs filed a supplemental notice that defendants have, in fact, provided them with a proposed sampling plan.

        distributors and containers that never left defendants' possession.

(3)    Discovery is necessary to determine feasibility of tracing consumer-returned products.

(4)    Defendants failed to follow the Food and Drug Administration ("FDA") mandate to assure that returned merchandise was separate from acceptable materials.

(5)    Defendants make unsubstantiated claims regarding statistical sampling.

(6)    This Court's earlier order allows plaintiffs to pursue spoliation claims.

**C.**    **Defendants' Opposition**

Recognizing the Georgia plaintiffs' argument that defendants failed to notify the federal courts in which individual plaintiff's actions are pending, defendants contend that any individual lawsuits are irrelevant because this Court's order required them to notify only the federal courts in which class-action lawsuits were pending.

Defendants assert that the Georgia plaintiffs submit no legal authority to the Court that a protective order must be withheld until it is certain that no further litigants in any jurisdiction assert new claims. Defendants maintain that the Court may conclude, in its discretion, that the proceedings thus far are sufficient to protect the interests of absent and/or future parties. Noting that the FDA requires destruction of recalled products, defendants note that any court order to the contrary would preclude any manufacturer from ever disposing of any recalled product.

Defendants next argue that it is incorrect that they will unilaterally select the units to be preserved, and, they contend, their plan is statistically rigorous. Defendants submit the affidavit of Fred A. Chonkan, who helped to formulate the plan. Chonkan has a graduate degree in applied statistics and extensive professional training in the field. In his affidavit, Chonkan notes that a

5

statistical sampling of only 4,300 units would be sufficient to test the defectiveness rate of defendants' entire inventory.

Defendants note that they have no way of tracing individually-returned units to their owners. They submit the sworn declaration of Randal P. McKay, Director of Product Safety and Security, who confirms that there is no process by which to do so. Defendants maintain that the Georgia litigation is no different from any other lawsuit simply because one of the named plaintiffs there, Kimberle Fritz, returned two containers of Similac to defendants. Defendants argue that Fritz spoliated her own evidence by waiting more than 10 months to return the defective Similac after she had learned of the recall in November 2010. Defendants assert that Fritz had nearly nine months to test, photograph or otherwise document the defective Similac in her possession. Her actions, defendants contend, constitute no reason for this Court to differentiate the Georgia lawsuit from this one here.

## III.   Law and Analysis

The Court has already rejected all of the legal and factual arguments raised by the Georgia plaintiffs in opposition to defendants' request for the final authorization of the inventory-reduction protective order. [Doc. ##76 & 131]. The Court has reviewed defendants' inventory reduction protocol and finds that it is statistically sound, will retain an adequate amount of both open and unopened containers, will protect plaintiffs' interests here and complies with this Court's earlier orders.

The only question here is whether the Court should defer ruling on the motion for final authorization until after the ruling of the Georgia court. Defendants themselves do not even ask the Court to rule on their motion until the Georgia court adopts this Court's earlier order. However, no

party has cited the Court to any legal authority – and this Court has found none – that would require it to defer ruling on the motion here until after the Georgia court either adopts or rejects this Court's earlier opinions. There is no assurance that new litigants in any other federal or state jurisdiction will not file similar claims before the Georgia court rules, and the Court recognizes the undue burden and cost that defendants have incurred to retain the product until now, after almost ten months of litigating the dispute over the protective order. Seven sister courts have concurred in this Court's earlier opinions, and this Court sees no reason to defer ruling on this issue any longer.

**IV.     Conclusion**

Accordingly, and for the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Final Authorization of Inventory Reduction [Doc. #150] is GRANTED as outlined above.

**IT IS FURTHER ORDERED** that the Georgia Plaintiffs' Memorandum of Points and Authorities Concerning this Court's October 13, 2011 Order [Doc. #157] is REJECTED.

New Orleans, Louisiana, this 13th day of March, 2012.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**